William J. HIGDON et al., Appellants,

v.

Julian W. KNIPPENBERG et al., Appellees.

Supreme Court of Kentucky.

Dec. 17, 1976.

Rehearing Denied May 20, 1977.

Joseph J. Leary, Frankfort, James L. Avritt, Lebanon, William M. Johnson, Frankfort, for appellants.

William A. Young, Frankfort, Quinn F. Pearl, Sr., Elizabethtown, for appellees.

PER CURIAM.

William J. Higdon and others, as protestants, appeal from a judgment of the Franklin Circuit Court, upholding an order of the Alcoholic Beverage Control Board granting a retail package liquor license to Harry Hagan and Louise Hagan.

The Hagans owned and operated two retail package liquor stores in Bardstown, Nelson County. Prior to November 18, 1974, the Hagans applied to the Alcoholic Beverage Control Board for approval of a retail package liquor license for a new location approximately twelve miles west of Bardstown on U.S. Highway 62, one to one and one-half miles from the community of Boston and .4 of a mile from the Hardin County line—a dry county. The avowed purpose was to effect a transfer of a Bardstown package license to the new location. The Boston Beverage Company at the time owned and operated a retail package liquor store on the outskirts of the small unincorporated town of Boston at a point approximately 1.2 miles from the Hagans' proposed location.

The procedure by which Hagan proposed to move his package liquor license from Bardstown to the new location is designated throughout the briefs as a "transfer of a license." However, this is a misnomer of the first magnitude. KRS 243.650 restricts the transfer of a license to another premises to cases of destruction of the licensed premises by an act of God or casualty for which the licensee is not responsible. In an effort to evade the clear mandate of the statute, there seems to have come into being a common subterfuge by which a license holder desiring to relocate his premises would apply for a license for the new premises with the understanding that if it were granted the license for the old premises would be surrendered. Regardless of its designation, the procedure under the statute was nothing more than an application for a new license for a different location.

In Nelson County a package license could be issued for an area outside the corporate limits of a city only by compliance with KRS 243.230(4)(a). The statute, after limiting licenses to incorporated cities of the first, second, and third classes, provides that notwithstanding this limitation the Board, after an investigation, could issue a license

to sell distilled spirits by the package at premises not located within a city if "substantial aggregations of population would otherwise not have reasonable access to a licensed vendor." The Hagans, in an effort to meet this statutory requirement, introduced census records of Nelson County and incorporated areas within the county. The protestants introduced a map of the county showing the voting precincts with the number of registered voters in each precinct. Hagan's new premises, as well as the business operated by Boston Beverage Company, were both located in Boston Precinct No. 14. The area was definitely rural. The evidence indicated that there were only four houses with some ten to twenty residents within a radius of one mile of Hagan's proposed premises, while within a radius of five miles there were no more than 1500 residents—men, women, and children.

A majority of the precincts used in an effort to establish the "substantial aggregations of population" was so bounded that in each there were included areas of the urban population of Bardstown surrounding the city limits. Many of these residents voted in Bardstown, and it is error to characterize them as rural residents of Nelson County. There was no showing in the record that any of the residents in the precincts used by Hagan and the Board to justify the issuance of a new package liquor license was so situated that he would not have reasonable access to a licensed vendor should Hagan's application be denied.

There is substantial evidence in the record that Boston Beverage Company had for a period of some nine years adequately served this area of Nelson County. In fact, no one testified that he was being inconvenienced by the fact that there was only one outlet in the area.

The Board, in granting the license, made findings of fact, pertinent ones being as follows:

"5. The population of Nelson County, as disclosed by the 1970 U.S. Census, was 23,477. This figure represents some population growth since the 1960 U.S. census. According to the same census figures, 5,816 persons reside in Bardstown, 1,072 persons reside in the town of Bloomfield and 977 persons reside in the town of New Haven. The total rural population of Nelson County outside of the last three mentioned urban areas was 15,612.

6. The location to which the applicants desire to move their existing license is situated near the terminus of the Boston-New Haven Road. The location of the applicants' proposed premises is in Boston Precinct #14. This precinct is contiguous to precincts #2, #12 and #13 of Nelson County. There are presently 505 registered voters in Precinct #14, 568 registered voters in Precinct #2, 548 registered voters in Precinct #12, and 732 registered voters in Precinct #13. These four precincts contain a total population of 2,353 persons.

7. The only retail package liquor outlet in reasonable proximity to the proposed premises of the applicants is that of the protestants, Buckler, Higdon and Crain, doing business under the trade name of Boston Beverages, Inc., situated in the rural community of Boston.

8. Substantial aggregations of population would otherwise not have reasonable access to a licensed vendor of whiskey by the package at retail unless the application herein sought by the applicants is granted."

Parenthetically, the map filed by the protestants discloses that all of Precinct No. 2 except the northwest corner near Boston, the southeast corner of Precinct No. 14, and almost one-half of Precinct No. 13 are located south of the Bluegrass Parkway. The Hagan location is north of the parkway. In order for a resident south of the parkway to reach Hagan's new location, he would be required to travel west to the Boston interchange, located near the Hardin County line, or travel east to the interchange on U.S. 31E near Bardstown.

In *Pearl v. Marshall,* Ky., 491 S.W.2d 837 (1973), this court held that the issuance of a license in a rural area could be justified only upon a determination of the following basic facts: (1) the approximate number of people who would be affected *by a denial of the application;* and (2) what access would these people have to a licensed vendor *if the application were to be denied*?

The findings of fact of the Board studiously neglect to designate any number of people who would be affected by the denial or the access these people would have if the application were to be denied. In fact, the findings are confined solely to a parroting of census figures concerning the various populated areas of the county along with the records of the county court clerk giving the number of registered voters in the various precincts. There is an ominous silence regarding how many of the residents or registered voters might be affected by a denial of the application.

The findings of the Board admit that there is already one retail package liquor store located within approximately one mile of the location proposed by Hagan but deliberately neglect to even hint that this outlet, Boston Beverage Company, is not adequately providing for the needs of the people located within the area. It is difficult to understand how substantial aggregations of the population would otherwise not have reasonable access to a licensed vendor, when at the time there was and had been for a period of nine years an active, viable, and apparently aggressive vendor located within approximately a mile of the Hagans' proposed location.

The record is devoid of any evidence which would support the Board in granting the license to the Hagans. Therefore, the granting of the license by the Board was an abuse of its discretion. *Pearl v. Marshall,* Ky., 491 S.W.2d 837 (1973), and *Simms v. Angel,* Ky., 513 S.W.2d 176 (1974).

This court has upon a number of occasions commented upon the difficulty created by the utter lack of standards concerning the issues presented by this appeal. The failure of the Board in this instance to

at any time adopt regulations which would forewarn applicants of the required evidence necessary to effect the approval of an application brings about the dilemma in which the Hagans now find themselves. It is unfortunate that they have gone to the expense of erecting a building and moving a business to this location. Regulations and guidelines properly drawn and enforced could and would have prevented the problems and potential financial loss to the Hagans.

The judgment is reversed for further proceedings consistent with the opinion.

CLAYTON, LUKOWSKY, PALMORE, STEPHENSON and STERNBERG, JJ., concur.

REED, C. J., not sitting.

JONES, J., dissents.